994 So.2d 473 (2008)
Peter KERTESZ, Appellant,
v.
The SPA FLORAL, LLC, Gustavo Moreno, Oscar Mora, Nora McDowell, Mercy Navarro, Jean-Bernard Reby, and Rudy Wann, Appellees.
No. 3D08-562.
District Court of Appeal of Florida, Third District.
November 5, 2008.
*474 Silverberg & Weiss, and Paul K. Silverberg and Kraig S. Weiss, for appellant.
Ehrenstein Charbonneau Calderin and Michael D. Ehrenstein, for appellees.
Before GERSTEN, C.J., and WELLS and SALTER, JJ.
SALTER, J.
Peter Kertesz appeals a final order granting a motion to dismiss his amended complaint against the seven appellees, defendants below, with prejudice. The issue below, and here, is whether the removal of Kertesz as the managing member of The Spa Floral, LLC, and the allegedly-resultant loss of a major client of the LLC gave Kertesz any right of action against the LLC or its members, the defendants below, who collectively own a majority in interest. Finding that Kertesz expressly conceded that the individual appellees owned 55% of the LLC, we find no such right of action and affirm the order of dismissal with prejudice.
We assume for purposes of review, as did the trial court in considering the motion to dismiss, that the allegations of the amended complaint are true. We review the trial court's order de novo. Morin v. Fla. Power & Light Co., 963 So.2d 258, 260 (Fla. 3d DCA 2007).
Kertesz formed the LLC and operated it under the business name "Mourning Flowers." The LLC specialized in the design, preparation, and sale of flowers and floral arrangements to funeral homes. Although Kertesz formed the LLC and was initially the only member and manager, he ultimately granted ownership interests totaling 55% of the LLC to the six individual appellees. During his tenure as the only managing member, Kertesz also arranged a project with a cremation company that became the LLC's largest and most profitable client.
In mid-2007, the members had a falling out that culminated in the majority removing *475 Kertesz as managing member. Kertesz alleged that shortly after this, the LLC's distributors and clients (including the largest client) "raised concerns as to the LLC's ability to successfully carry on operations without Kertesz" and "threatened to terminate their relationship with the LLC if Kertesz was not brought back into the operations of the LLC." These actions, Kertesz claimed, caused the LLC to suffer irreparable harm and lose business and opportunities. Kertesz sought (1) the judicial dissolution of the LLC based on these circumstances and an alleged deadlock in management of the LLC, (2) the appointment of a receiver to protect the assets and goodwill of the LLC, and (3) compensation for "a loss in value of his member interest in the LLC" based on the other members' alleged breach of a duty of care to Kertesz.
The rather obvious shortcoming in these legal theories is that there was no deadlock at all, and the majority had the absolute right to replace Kertesz as managing member.[1] The governance and operation of an LLC in the absence of other written terms is a simple matter of majority rule. Kertesz had no majority.
A "deadlock," like its more recent cousin "gridlock," is a standstill  "a state of inaction or of neutralization caused by the opposition of persons or of factions (as in a government or voting body)."[2] Here there was no impasse; the majority interest holders voted, and Kertesz lost. Kertesz's next allegation, that the LLC lost business and opportunities because of his removal, calls into question the wisdom or business judgment of the majority. But obviously the majority has more at risk and therefore a greater incentive to try to make a decision in the best interest of the LLC. The members and LLC cannot be sued simply because they exercised their prerogative to change management (in the absence of some wrongful or unlawful basis for that action that has not been alleged here  prohibited discrimination, for example, or under the circumstances detailed in the whistleblower statutes).[3]
"No deadlock" in this case means no basis for judicial dissolution or appointment of a receiver. §§ 608.441(3), .449,.4491(3), Fla. Stat. (2007). The majority can continue to operate the LLC. The alleged near-term decline in the value of Kertesz's membership interest (allegedly as a result of the majority's decision to replace him as managing member) also is not actionable without more. That decision and Kertesz's replacement do not constitute misappropriation or waste just because the decision received a thumbs-down from some clients. The business decision may prove a sound one over a longer term; and if it doesn't, a change of management that ultimately proves to have been improvident does not of itself give rise to a cause of action against the majority who voted for it or the LLC.
Kertesz's legal theory would, if adopted, preclude his replacement because some of the LLC's clients preferred working exclusively with him as manager. The trial court properly declined to endorse any *476 such restriction on the rights of the majority members.
Affirmed.
NOTES
[1] Neither the complaint nor the amended complaint referred to  much less attached a copy of  any articles of organization or operating agreement relating to the LLC, or any contract between the LLC and Kertesz. As a result, the analysis of Kertesz's claims is governed by section 608.4231(3), Florida Statutes (2007), and applicable decisional law.
[2] Webster's Third New International Dictionary Unabridged 580 (1986).
[3] See § 608.4228, Fla. Stat. (2007).