DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GARY FROONJIAN,**
Appellant/Cross-Appellee,

v.

**ULTIMATE COMBATANT, LLC, RONALD BRIAN POLOMNY**
and **NATSUKO NAKAHARA,**
Appellees/Cross-Appellants.

No. 4D14-662

[May 27, 2015]

Appeal and cross-appeal of non-final orders from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Marina Garcia-Wood, Judge; L.T. Case No. 13-013874 CACE (18).

Warren B. Kwavnick and Paul D. Shafranski of Cooney Trybus Kwavnick Peets, PLC, Fort Lauderdale, and Ruben E. Socarras of Marshall Socarras Grant, P.L., Boca Raton, for appellant/cross-appellee.

Rafael A. Castro, III and David E. Wolff of Appellate Services Par Excellence, PLLC, Miami, for appellees/cross-appellants.

GERBER, J.

Defendant Gary Froonjian filed a counterclaim and third-party complaint seeking injunctions after being removed as a member of a limited liability company and having his membership interest redistributed. The circuit court entered orders dismissing the injunction actions with prejudice on the ground that the defendant could not state a cause of action. While we agree the defendant could not state a cause of action based on his removal, he could state a cause of action based on the redistribution. Thus, we affirm in part and reverse in part the dismissal of the injunction actions.[1]

---

[1] The appellees cross-appealed from the court's denial of their motion to dismiss the counts of the defendant's counterclaim and third-party complaint seeking an accounting. Unlike the main appeal for which we have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(B) (authorizing appeals from orders denying injunctions), we do not have jurisdiction of the cross-appeal under rule

In evaluating the defendant's appeal, our review is de novo. *See Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011) (a trial court's order granting a motion to dismiss a counterclaim and third-party complaint is reviewed de novo) (citation omitted). We will present as true the facts which the defendant alleged in the four corners of his counterclaim and third-party complaint. *See id.* (in considering a motion to dismiss a counterclaim and third-party complaint, a court may not go beyond the four corners of the counterclaim and third-party complaint and must accept the facts alleged therein and exhibits attached as true) (citation omitted).

According to the counterclaim and third-party complaint, third-party defendants Polomny and Nakahara created a limited liability company (LLC) to operate a business. They created the LLC by filing articles of organization with the state. The articles identified Polomny and Nakahara as the LLC's "members." *See* § 608.402(21) (2013) ("'Member' means any person who has been admitted to a limited liability company . . . and has an economic interest in a limited liability company which may, but need not, be represented by a capital account . . . .").

As would become significant later, Polomny and Nakahara did not adopt an operating agreement for the LLC. *See* § 608.402(24), Fla. Stat. (2013) ("'Operating agreement' means . . . written or oral provisions that are adopted for the management and regulation of the affairs of the limited liability company and that set forth the relationships of the members, managers, or managing members and the limited liability company . . . .").

Polomny later approached the defendant about joining the LLC by obtaining a one-third "membership interest" and becoming a "managing member." *See* § 608.402(23), Fla. Stat. (2013) ("'Membership interest' . . . means a member's share of the profits and the losses of the limited liability company, the right to receive distributions of the limited liability company's assets, voting rights, management rights, or any other rights under this chapter or the articles of organization or operating agreement."); § 608.402(20), Fla. Stat. (2013) ("'Managing member' means a member appointed or elected as a managing member of a member-managed company.").

According to the defendant, he accepted the offer and, as a result, dedicated his time and efforts towards getting the LLC "off the ground" and

---

9.130. Therefore, we dismiss the cross-appeal without further comment, and discuss only the defendant's appeal.

2

growing its business. Nakahara filed with the state an amendment to the LLC's articles of organization, adding the defendant as a "managing member." That same day, Polomny sent the defendant an e-mail confirming that he would have "equal ownership in [the LLC]" such that "[a]ny money invested b[y] each person w[ould] be paid back" from the LLC's business. However, the e-mail cautioned that there were still "a lot of things to discuss" and that the parties still "need[ed] to draw up a formal contract of ownership."

The following week, Polomny sent the defendant an e-mail stating that the defendant "was no longer 'on the LLC,' that [the defendant] never had a one-third ownership interest as a member of the [LLC], and that instead, [the defendant] would be given the 'opportunity' to purchase five percent (5%) of the [LLC's] equity for $20,000." Three days later, Nakahara filed with the state a second amendment to the LLC's articles of organization, removing the defendant's membership interest and redistributing it to Polomny and Nakahara.

The defendant sent the LLC a letter in which he threatened to sue the LLC "if his membership interest w[as] not recognized."

The LLC later filed a declaratory judgment action seeking a determination of two issues: (1) whether the defendant had a valid claim as a member in the LLC if there was "no signed writing evidencing that [Polomny and Nakahara] voted unanimously . . . to admit him as a member," *see* § 608.4232, Fla. Stat. (2013) ("Except as otherwise provided in the articles of organization or the operating agreement, no person may be admitted as a member unless a majority-in-interest of the members consent in writing to the admission of the additional member."); and (2) whether Polomny and Nakahara could, by vote, "legally refuse to recognize" the defendant's membership interest.

The defendant filed a counterclaim against the LLC and a third-party complaint against Polomny and Nakahara. Both the counterclaim and the third-party complaint requested the entry of "a mandatory injunction requiring the [LLC] to reinstate [the defendant] as a member and one-third owner." The defendant also requested an accounting from the LLC. In support of his requests, the defendant alleged that, because the LLC did not adopt any operating agreement which may have set forth expulsion parameters, Polomny's and Nakahara's removal and redistribution of his membership interest via majority vote "wrongfully deprived [him] of his ownership interest" in the LLC. The defendant reasoned that the Florida Limited Liability Company Act (Chapter 608, Florida Statutes) does not provide an LLC "or its members [with] the power to unilaterally take a

member's ownership interest in an LLC without that member's consent or without payment of due consideration." Therefore, the defendant alleged, he maintained his membership interest in the LLC.

The LLC, Polomny, and Nakahara filed motions to dismiss the counterclaim and third-party complaint. The motions raised two arguments. First, the motions argued that the defendant lacked standing to contest his removal because Polomny and Nakahara never consented in writing to admitting him as an additional member. *See* § 608.4232, Fla. Stat. (2013) ("Except as otherwise provided in the articles of organization or the operating agreement, no person may be admitted as a member unless a majority-in-interest of the members consent in writing to the admission of the additional member."). Second, the motions argued that, even if the defendant had standing as a member, the counterclaim and third-party complaint failed to state a cause of action because the lack of an operating agreement provided Polomny and Nakahara, as a majority of the LLC's members, with the "absolute right to [remove the defendant]."

Following a hearing, the circuit court entered an order granting the motions to dismiss. In the order, the court rejected the motions' lack of standing argument on the ground that whether the defendant was properly added as a company member was an issue "better suited for summary judgment." However, the court accepted the motions' argument that the defendant's injunction actions failed to state a cause of action. The court, citing *Kertesz v. Spa Floral, LLC*, 994 So. 2d 473, 475 (Fla. 3d DCA 2008), found that "under Florida law . . . the other members of the [LLC] had an absolute right to remove" the defendant from the LLC. Accordingly, the court found the defendant could not amend his claims to state a cause of action.

This appeal followed. The defendant argues the circuit court erred in dismissing his injunction actions because "[n]othing in the Florida Limited Liability Company Act authorizes such involuntary expulsion and appropriation of a member's ownership interest. On the contrary, the Act provides that the interest of a member in a limited liability company is personal property and . . . majority members have no authority to unilaterally expel a minority member and divest him of this property interest."

We treat the defendant's argument as two separate issues: (1) whether Polomny and Nakahara, as the majority members, were authorized to expel the defendant from the LLC; and (2) whether Polomny and Nakahara, as the majority members, were authorized to redistribute the defendant's membership interest. We address each issue in turn.

4

On the first issue, under the facts as alleged in the counterclaim and third-party complaint, we conclude that Polomny and Nakahara had the authority to expel the defendant from the LLC. The authority to expel the defendant existed because the LLC had no operating agreement. Where an LLC has no operating agreement, "[m]anagement [is] vested in its members . . . in proportion to the then-current percentage or other interest of members in the profits of the [LLC]" and "*the decision of a majority-in-interest of the members . . . shall be controlling.*" § 608.422(2)(a)-(b), Fla. Stat. (2013) (emphasis added). *See also* § 608.4231(3), Fla. Stat. (2013):

> If no conflicting voting provision is contained in the articles of organization or operating agreement:
>
> (a) The members of a limited liability company shall vote in proportion to their then-current percentage or other allocable interest in the profits of the limited liability company . . . .
>
> (b) In all matters in which a vote is required, *a vote of a majority-in-interest of the members shall be sufficient* unless provided otherwise in the limited liability company's articles of organization or operating agreement or this chapter.

(emphasis added).

Our conclusion that Polomny and Nakahara were authorized under sections 608.422(2) and 602.4231(3) to expel the defendant from the LLC is consistent with our sister court's decision in *Kertesz*.

In *Kertesz*, the plaintiff formed an LLC to operate a business. 994 So. 2d at 474. He ultimately granted ownership interests totaling 55% of the LLC to six other persons. *Id.* The members later had a falling out which culminated in the majority removing the plaintiff as the managing member. *Id.* at 474-75. The plaintiff filed an action claiming his removal as managing member caused the LLC to suffer irreparable harm and lose business and opportunities. He sought: (1) the judicial dissolution of the LLC based on these circumstances and an alleged deadlock in management of the LLC; (2) the appointment of a receiver to protect the LLC's assets and goodwill; and (3) compensation for "a loss in value of his member interest in the LLC." *Id.* at 475.

The circuit court entered an order granting with prejudice the LLC's and other members' motion to dismiss the action. The third district affirmed. Our sister court, noting the plaintiff's express concession that

the other members owned 55% of the LLC, and that the plaintiff did not refer to or attach a copy of any articles of organization or operating agreement for the LLC, concluded the analysis of the plaintiff's claims was governed by section 608.4231(3). According to our sister court:

> [*T*]*he majority interest holders voted, and [the plaintiff] lost.* . . . The members and LLC cannot be sued simply because they exercised their prerogative to change management (in the absence of some wrongful or unlawful basis for that action that has not been alleged here – prohibited discrimination, for example, or under the circumstances detailed in the whistleblower statutes).
>
> . . . .
>
> [The plaintiff's] legal theory would, if adopted, preclude his replacement because some of the LLC's clients preferred working exclusively with him as manager. *The trial court properly declined to endorse any such restriction on the rights of the majority members.*

*Id.* at 475-76 (emphasis added; internal footnote omitted).

The defendant seeks to distinguish *Kertesz* on the ground that, in *Kertesz*, the plaintiff was removed by a majority vote from his position as a *managing* member. According to the defendant, nothing in *Kertesz* supports the idea that majority members can vote to remove a minority member from the LLC as occurred in this case.

We disagree. Nothing in *Kertesz* supports the idea that, in the absence of an operating agreement, any restriction exists on the ability of the majority members to remove a minority member, without some wrongful or unlawful basis for that action which has not been alleged here.

However, turning to the second issue, the redistribution of the defendant's membership interest is a separate matter. Section 608.431, Florida Statutes (2013), provides: "An interest of a member in a limited liability company is *personal property*." (emphasis added). *See also* § 608.402(23), Fla. Stat. (2013) ("'Membership 'interest,' 'member's interest,' or 'interest' means a member's share of the profits and the losses of the limited liability company, the right to receive distributions of the limited liability company's assets, voting rights, management rights, or any other rights under this chapter or the articles of organization or operating agreement.").

6

Being personal property, we conclude the majority members cannot simply redistribute a minority member's interest to themselves. Unfortunately, though, chapter 608 does not provide any guidance for the disposition of a removed member's interest in an LLC.

However, applying the doctrine of *in pari materia,* we can deduce two possible alternatives under chapter 608 for the disposition of a removed member's interest in an LLC. *See Fla. Dep't of State, Div. of Elections v. Martin,* 916 So. 2d 763, 768 (Fla. 2005) ("The doctrine of *in pari materia* is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent.") (citation omitted).

First, the minority member's removal may be treated as if the member withdrew from the LLC as provided in section 608.427, Florida Statutes (2013). Under that scenario:

> Upon withdrawal, a withdrawing member is entitled to receive any distribution to which the withdrawing member is entitled under the articles of organization or operating agreement, and, *if not otherwise provided in the articles of organization and operating agreement, the withdrawing member is entitled to receive, within a reasonable time after withdrawal, the fair value of the withdrawing member's interest in the limited liability company as of the date of resignation based upon the withdrawing member's right to share in distributions from the limited liability company.*

§ 608.427(2), Fla. Stat. (2013) (emphasis added).

Second, in the absence of expulsion procedures in the LLC's articles of organization or operating agreement, the removal of a member may be accompanied by the LLC's dissolution. *Cf. Cadwalader, Wickersham & Taft v. Beasley,* 728 So. 2d 253, 256 (Fla. 4th DCA 1998) (under New York law, absent a provision in a partnership agreement for expulsion, the removal of a partner may be accomplished only through dissolution). Under that scenario, the LLC's assets, after the settling of the LLC's accounts and distribution to creditors, ultimately would be distributed "to members pro rata in proportion to their then-current percentage, or other interests in the profits, of the [LLC]." § 608.444(3), Fla. Stat. (2013).

In sum, because the majority members could not simply redistribute the defendant's membership interest in the LLC to themselves, we

7

conclude the defendant can state a cause of action in his counterclaim and third-party complaint for an injunction to prevent such redistribution without proper consideration under the procedures for withdrawal of a member under section 608.427, Florida Statutes (2013), or after the procedures for dissolution of the LLC under sections 608.441-.446, Florida Statutes (2013). Thus, we remand for the reinstatement of the defendant's injunction actions with leave to amend the actions in a manner consistent with our conclusion.

*Affirmed in part, reversed and remanded in part, dismissed in part.*[2]

CONNER and KLINGENSMITH, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

---

[2] By coincidence, after the defendant's removal from the LLC in 2013, the Legislature enacted the "Florida Revised Limited Liability Company Act," effective as chapter 605, Florida Statutes (2014). Chapter 605 substantially revised chapter 608 to govern "[t]he internal affairs of a limited liability company." § 605.0104(1), Fla. Stat. (2014). Among the revisions in chapter 608 was the addition of provisions by which a member can be expelled from the LLC, *see* §§ 605.0602(4)-(6), Fla. Stat. (2014), and by which the expelled member's interest is disposed, *see* § 605.0603(1)(c), Fla. Stat. (2014). Because the defendant's removal from the LLC occurred before the Legislature enacted chapter 605, we are constrained from applying chapter 605's provisions to this appeal.